FILED 23 SEP '11 15:08 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KATHLEEN MARIE POWELL,                                         Civil No. CV 10-923-TC

                    Plaintiff,

          v.                                          FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner

Social Security Administration,

                    Defendant.

_____

COFFIN, Magistrate Judge:

        Plaintiff seeks review of the Social Security Commissioner's final decision denying his

application for benefits under Title II of the Social Security Act.  For the following reasons, I

recommend that this court affirm the Commissioner's decision in part and reverse in part and remand the Commissioner's decision for further proceedings consistent with the findings below.

### Background

On June 6, 2005, plaintiff filed her current claim for disability insurance benefits under Title II of the Social Security Act (Act). The claim was denied initially and upon reconsideration. On December 5, 2007, an Administrative Law Judge (ALJ) held a hearing, and on February 26, 2008, the ALJ issued a decision denying benefits. Plaintiff requested review of the ALJ's decision on March 10, 2008. Two years later, on June 15, 2010, the Appeals Council issued a denial of review, thereby making the ALJ's decision the Commissioner's final decision that is subject to judicial review. Plaintiff timely filed an action in this court.

### Disability Analysis

The Commissioner engages in a sequential process of between one and five steps in determining whether an individual is disabled under the Act. Bowen v. Yukert, 482 U.S. 137, 140 (1987). Anderson challenges the ALJ's evaluation of the evidence and her conclusions at steps two through five.

Step one requires the ALJ to determine if the claimant has performed any gainful activity (SGA) since the alleged onset date of the disability. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement. Id. at § 404.1520(a)(4)(ii). If the claimant does not have such an impairment, he is not disabled. At step three, the ALJ determines whether the severe impairment (or a combination of impairments) meets or equals a "listed" impairment in the regulations. Id.

404.1520(a)(4)(iii). If so, then the claimant is disabled. If the adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his impairments. Id. 404.1520(a)(4)(e). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. Id. 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. Id. 404.1520(a)(4)(v); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of establishing disability under steps one through four. Tackett, 180 F.3d at 1098. If the analysis reaches the fifth step, the burden shifts to the Commissioner to show jobs within claimant's RFC exist in the national economy. Id. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

### The ALJ's Findings

At step one, the ALJ found that plaintiff has not earned SGA since her onset date. At step two, the ALJ found that plaintiff has degenerative disc disease of the lumbar spine, left knee joint disease, status/post left knee repair, depression, and somatization or pain disorder. The ALJ found at step three that the plaintiff's testimony regarding her pain was not entirely credible given the somatization or pain disorder. Thus, at step four, the ALJ found that the plaintiff had the RFC to perform modified light work except for occasional balance, stoop, kneel, crouch, and crawl; unable to climb ladders, ropes, or scaffolds; need to change positions and stretch about every five minutes every hour, and simple 1-2-3 step work. Based on the testimony of the

Page 3 – FINDINGS AND RECOMMENDATION

vocational expert, the ALJ found that plaintiff's past relevant work (PRW) required work activities precluded by her impairment. At step five, however, the ALJ found that plaintiff could perform other work based on his conclusion that plaintiff could perform modified light work and the vocational expert's conclusion that plaintiff could perform other unskilled, light exertion work. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Tr. 22-30.

## DISCUSSION

Plaintiff claims that the ALJ erred by: (1) wrongfully discrediting the opinion of an examining psychologist James Bryan, Ph.D; (2) failing to consider lay witness statements of plaintiff's husband, Lawrence Powell, in the RFC determination; (3) failing to consider plaintiff's foot condition in determining the RFC; (4) failing to fully develop the record in not considering a medical expert at the hearing; and (5) failing to find plaintiff disabled as of her 55th birthday.

### I.    Weight Given to Consultative Evaluation by Dr. Bryan

In making the RFC determination, the ALJ chose to give little weight to Dr. Bryan's evaluation of plaintiff's ability to work in a conventional setting, finding that Dr. Bryan ignored his own test results and advice and based his opinion on plaintiff's subjective complaints. Tr. 27. Plaintiff argues that the ALJ failed to articulate legitimate reasons to discredit Dr. Bryan's opinion in determining RFC. Plaintiff asserts that Dr. Bryan did not ignore his own test results and advice, nor did he base his opinion on plaintiff's subjective complaints.

An ALJ, not a reviewing court, must resolve conflicts in the medical evidence. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). An ALJ must

give clear and convincing reasons to reject a treating or examining doctor's uncontradicted opinion and specific and legitimate reasons to reject a contradicted opinion. Id. Sufficient reasons for rejecting an opinion include reliance on a claimant's discredited subjective complaints or inconsistency with medical records or daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008). The parties do not dispute that Dr. Bryan's conclusion is contradicted by other medical opinions in the record; the only issue for this court is whether the ALJ provided specific and legitimate reasons to reject Dr. Bryan's assessment.

Dr. Bryan performed a neuropsychological examination of plaintiff on November 19th, 2007. Tr. 597-608. Dr. Bryan administered five objective testing instruments in addition to interviewing plaintiff and reviewing her lengthy medical file. Dr. Bryan diagnosed plaintiff with pain disorder (associated with both psychological factors and general medical condition), major depressive disorder, and histrionic personality features. Tr. 608. Plaintiff's test scores indicated "deliberate under-performance," which he noted should be considered "invalid estimates of her actual abilities." Tr. 604. However, Bryan also found that plaintiff was likely converting "psychological distress and unacceptable impressions of herself into physical symptoms." Tr. 606. He further explained that although plaintiff's somatoform disorder "seems to involve unrealistic exaggeration of symptoms . . . the symptom exaggeration is itself an aspect of the mental illness . . . [and plaintiff] is not malingering her symptoms." Tr. 607.

The ALJ gave diminished weight to Dr. Bryan's conclusion that plaintiff would require a very flexible and accommodating schedule and work environment, and would call in sick due to pain at least twice per month. Tr. 608. The ALJ found that because Dr. Bryan never connected plaintiff's pain disorder to her invalid test scores that he therefore ignored the scores. Dr. Bryan asserted that:

> Symptom exaggeration is itself an aspect of the mental illness . . .
> [plaintiff] was not malingering her test symptoms . . . [s]ymptom magnification is
> found through the poor validity test scores, low IQ test scores, and through
> elevated validity subscales of pathology measures . . . [t]he WAIS-III scores
> reflect a combination of (1) emotionally based interference of cognitive efficience
> and (2) somatoform expression of impairment.

Tr. 606. Thus, Dr. Bryan did in fact address how the scores might be impacted by pain disorder.

While I acknowledge that Dr. Bryan's opinion may not have ignored the test scores to the
extent asserted by the ALJ, nor based his opinion strictly on plaintiff's subjective complaints, the
ALJ nonetheless did not commit reversible error. It is the duty of the ALJ, not this court, to
determine credibility, resolve conflicts in medical testimony, and to resolve ambiguities.
Andrews v. Shahala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). Moreover, the court must uphold
the Commissioner's denial of benefits if the evidence is susceptible to more than one rational
interpretation, one of which supports the ALJ's decision. Burch v. Barnhart, 400 F.3d 676, 697
(9th Cir. 2005). Dr. Bryan's statements that plaintiff's scores "strongly indicated deliberate
under-performance" although she was "not malingering" are at best ambiguous. Tr. 604, 607.
Given the ambiguity, the evidence was susceptible to more than one rational interpretation.
Thus, even if the ALJ's interpretation was incorrect, it was nonetheless rationally supported, and
therefore falls outside of the purview of this court.

Moreover, the ALJ did not fully discredit Dr. Bryan's opinions; he found that plaintiff
indeed had severe pain disorder and depression per Dr. Bryan's analysis. Tr. 23. The ALJ
limited his rejection of Dr. Bryan's opinion to the prognosis of plaintiff's ability to work a full
time schedule, and even then only to the extent that it conflicted with other medical evidence in
the record. Tr. 27. Unlike Dr. Bryan, the following medical professionals found plaintiff to have
no impairments which would keep her from working a modified light schedule: Dr. Buuck, M.D.

(Tr. 203), Dr. Lawrence Zivin, M.D. (Tr. 367-368), Dr. Ronald Turco, M.D. (Tr. 381-382), Dr. Mary Ann Westfall, M.D. (Tr. 397-404), and Dr. Martin Kehrli, M.D. (Tr. 537-538). The ALJ properly resolved the conflicts of medical opinion testimony regarding plaintiff's ability to enter the workforce that existed between Dr. Bryan and those medical professionals. It is not within the province of this court to second-guess determinations of credibility, ambiguity, and conflicting medical opinion which is rationally based on substantial evidence. I therefore cannot find that the ALJ erred in giving diminished weight to Dr. Bryan's opinion.

II.      Consideration of Lawrence Powell's Statements

Plaintiff argues that the ALJ improperly discredited the lay testimony from plaintiff's husband, Mr. Lawrence Powell. Tr. 145-152, 732-741. An ALJ should consider lay evidence and must provide germane reasons if he rejects it. 20 CFR § 404.1513(d)(4); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). When making the RFC determination, an ALJ is not required to prepare a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record. Id. at 1219. Plaintiff contends that the ALJ rejected Mr. Powell's lay testimony, while the Commissioner contends that the ALJ considered the lay testimony and found it to be in accordance with the RFC. I agree with the Commissioner.

The ALJ did not expressly discredit Mr. Powell's testimony, and this court is not persuaded by plaintiff's argument that the ALJ implicitly discredited Mr. Powell's testimony. To the contrary, the ALJ stated he considered Mr. Powell's statements, and that his RFC determination was consistent with Mr. Powell's statements that plaintiff could lift only 10 to 20 pounds, that she had limited ability to walk, and that she needed to rest for several minutes every

Page 7 – FINDINGS AND RECOMMENDATION

hour. Tr. 27-28. The ALJ incorporated into the RFC statements by Mr. Powell, finding limitations regarding plaintiff's balance, stooping, kneeling, crouching, crawling, and climbing ladders and ropes. Furthermore, the ALJ's determination was consistent with Mr. Powell's statements that plaintiff would require step-by-step instruction and "simple" work. Id.

Thus, Mr. Powell's observations were appropriately considered and factored into the ALJ's final determination that plaintiff could perform unskilled, less than light duty work. Accordingly, I find no error.

### III.    Consideration of Plaintiff's Left Foot Condition

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons to reject evidence involving plaintiff's left foot condition in two respects. First, plaintiff submits that the plantar fasciitis in her left foot should have been found to be a severe impairment. Second, plaintiff submits that since her foot condition was not found to be a severe impairment, the ALJ's RFC determination was erroneous.

This court finds little support for plaintiff's assertion that the ALJ erred by rejecting the medical opinions of plaintiff's numerous treating and examining physicians. The ALJ addressed plaintiff's foot condition explicitly in his decision, noting that "a diagnosis of plantar fasciitis was made . . . an imaging study of the foot revealed only a thickening of the plantar aponeurosis." Tr. 22 (citing Dr. Dietrich's report, Tr. 297). While Dr. Buuck noted in 2001 that a MRI of plaintiff's left foot showed a possible focal fibrosis or a ganglion cyst (Tr. 327-28), that diagnosis does not appear to have been definitive. Though subsequent examinations by various doctors noted plantar fasciitis, focal fibrosis/ganglion cyst was *not* diagnosed by Dr. Taylor in 2001, Dr. Hoppert in 2002, Dr. Dietrich in 2003, or by Drs. Zivin and Gripenkoven in 2005. Tr.

Page 8 – FINDINGS AND RECOMMENDATION

206, 211, 295, 369. Therefore, this court does not find that the ALJ rejected uncontroverted medical opinion plaintiff had focal fibrosis or a ganglion cyst.

Furthermore, the court is not persuaded that the plantar fasciitis diagnoses were rejected by the ALJ. As mentioned above, the ALJ found that plaintiff had plantar fasciitis, although he did not find the condition to be a severe impairment. Tr. 22. Plaintiff's argument appears to rest on the assertion that because her plantar fasciitis was painful, her condition must be found to be a severe impairment at step two. Plaintiff's Opening Brief, p.7. Plaintiff's conclusion, however, is incorrect for two reasons.

First, the proposition that a diagnosis of a painful condition such as plantar fasciitis will necessarily interfere with a claimant's ability to stand and walk is incorrect as a matter of law. The case law is clear that many medical conditions produce pain not severe enough to preclude gainful employment. See e.g., Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Thus, while plaintiff's physicians may have diagnosed her plantar fasciitis as painful, such a diagnosis does not necessarily preclude plaintiff's ability to perform work, particularly less than light duty work.

Second, the very physicians whose opinions plaintiff suggests were rejected by the ALJ did not find that plaintiff's plantar fasciitis would substantially limit her ability to work. In May 2001, Dr. Buuck released her to return to work following left knee surgery and workers' compensation leave. Tr. 213. In January 2002, Dr. Hoppert declined to perform plantar fasciectomy, noting that "patient symptoms of pain seem to be in excess of what one would expect on physical findings," and he instead suggested a psychiatric evaluation. Tr. 212. Dr. Dietrich asserted in 2003 that plaintiff was able to return to her job without restrictions and did not recommend further medical treatment. Tr. 301-302. In 2005, Drs. Zivin and Gripekoven

found that although plaintiff was "uncomfortable walking on hard surfaces because of plantar fasciitis," she was not restricted from work. Tr. 371. Drs. Zivin and Gripekoven also suggested psychiatric evaluation. Tr. 370.

Further complicating the ability to quantify plaintiff's alleged impairment based on pain, her medical record is replete with findings of exaggeration, somatization, and histrionic behavior. Tr. 212, 299, 367-68, 381-82, 397-404, 537-38, 604, 606-08. The tendency to exaggerate is a legitimate concern in determining credibility. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). As mentioned above, Dr. Hoppert found that plaintiff's pain seemed to go beyond the expected range of his physical findings. Tr. 212. Dr. Zivin stated that plaintiff's complaints of uncontrolled pain were the bases of her perception that she needed limitations of employment, and noted what appeared to be significant symptom magnification. Tr. 367-368. Dr. Turco noted "hysterical personality manifestations relating to ongoing issues of symptom embellishment." Tr. 381. Symptom magnification and pain embellishment were also noted by Dr. Westfall and affirmed by Dr. Kehrli. Tr. 397-404, 537-38. Dr. Bryan made similar observations in his analysis. Tr. 608.

In addition to plaintiff's histrionic behavior, the ALJ found that her own testimony suggested that she was more capable than she claimed. See Stubs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) ("normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" may suggest that the claimant is capable of performing the basic demands of work on a sustained basis). The ALJ noted that the plaintiff recently took a 10-day trip to Mexico where she walked, ate out, and "did well by her own account." Tr. 26-27. He noted that plaintiff drove and cleaned house. Tr. 27. The ALJ

further found that plaintiff's claim that she needed to recline or lay down was unsupported in the record. Tr. 27.

Therefore, considering the lack of medical evidence that plaintiff's foot condition consisted of anything more than plantar fasciitis, the lack of work restrictions imposed on plaintiff by her physicians regarding her foot condition, and the abundance of evidence of plaintiff's tendency to embellish her pain symptoms and related credibility concerns, this court cannot conclude that the ALJ erred by declining to find the foot condition a serious impairment. Because I find that the ALJ's analysis of plaintiff's foot condition was not erroneous, plaintiff's RFC determination argument is therefore inapposite.

IV.    Whether the ALJ Failed to Fully Develop the Record

Plaintiff asserts that the ALJ erred by not fully developing ambiguous evidence in the record by failing to call a medical expert to testify about plaintiff's 2006 knee injury. The claimant bears the initial burden of establishing disability. Tackett, 180 F.3d at 1099. "If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 . . . we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii). The durational requirement for impairments not expected to result in death is at least twelve months. 20 C.F.R. § 404.1509. The ALJ has a duty to fully and fairly develop the record and to assure that all of claimant's interests are considered. Tonapetyan, 242 F.3d at 1150 (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 2006)). The duty is heightened for an ALJ to diligently explore all relevant facts when the claimant is unrepresented by counsel. Id.

First, plaintiff has not established that the right knee injury was a severe impairment because it did not meet statutory durational requirement. Under step two, an impairment must be either present or expected to persist for at least twelve months. 20 C.F.R. § 404.1509. Here, the injury occurred in September 2006. Plaintiff had an MRI on her knee in October 2006, and an x-ray in November of 2006. The MRI revealed a horizontal meniscus tear, cartilage thinning, mild to moderate joint disease, and moderate joint effusion. Tr. 689. One month later, an x-ray revealed soft tissue swelling, moderately extensive degenerative changes, and no evidence of joint effusion. Tr. 691. In medical records taken by Dr. Vladimir Fiks M.D., who treated plaintiff monthly for several years, symptoms related to plaintiff's 2006 right knee injury are reported for her visits on September 21, 2006, October 24, 2006, and November 21, 2006. Tr. 659, 658, 655. Thereafter, through November 2007, the monthly medical records reflect no evidence of any symptoms related to plaintiff's right knee injury. Even giving plaintiff the most generous durational estimate of the record of symptoms related to her knee injury, the medical evidence reflects an impairment for merely four full months (from September to December of 2006, inclusive). Moreover, plaintiff did not present a scintilla of evidence that her right knee impairment was expected to last up to or beyond twelve months.

The record in this case was fully developed with respect to medical records; the ALJ was under no further duty to perform additional record development. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, the record contains hundreds of pages of medical records outlining a variety of physical and mental impairments. The ALJ found that plaintiff was severely impaired with regard to degenerative disc disease of the lumbar spine, left knee joint disease, status/post left knee repair, depression,

and somatization or pain disorder. Tr. 22. The right knee injury was not mentioned at plaintiff's ALJ hearing, although plaintiff was represented by counsel. Tr. 707.

Upon inspection of the record, I find that the record of symptoms of the right knee injury reflect four months, at maximum. Further, the record contains no evidence at all that the right knee injury was expected to impair plaintiff for the statutory period. Thus, plaintiff did not carry the burden of establishing a physical impairment under the statutory scheme. As I do not find any ambiguities in the record with regard to plaintiff's right knee injury, the ALJ was under no duty to further develop the already extensively developed record in this case. Therefore, the ALJ did not err by declining to call a medical expert to opine on the effect of plaintiff's right knee injury.

V.    Whether the Grids Direct a Finding of Disabled as of Plaintiff's 55th Birthday

Plaintiff alleges that the ALJ erred in finding at step four that plaintiff had past relevant work (PRW), but had never earned substantial gainful activity (SGA). Plaintiff argues, and this court agrees, that in order for an occupation to qualify as PRW, a claimant must have earned SGA while performing it. 20 C.F.R. § 404.1565(a). Plaintiff further alleges that the Grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.04, directs a finding of disabled as of plaintiff's 55th birthday, given plaintiff's lack of PRW. I agree. Plaintiff turned 55 on September 24, 2008. At the time of the ALJ's decision, plaintiff was still 7 months away from her 55th birthday, as the ALJ noted. Tr. 28. However, the denial of plaintiff's request for standard review was made in June 2010, several months before her 57th birthday. Considering plaintiff's lack of PRW, she should have been found disabled under Grids 202.04 as of her 55th birthday. Accordingly, remand for benefits is appropriate. Upon remand, the Commissioner shall award benefits as of

plaintiff's 55th birthday pursuant to the Grids.  Otherwise, the decision of the Commissioner should be Affirmed.

Conclusion

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed.  The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 23 day of September, 2011.

THOMAS M. COFFIN

United States Magistrate Judge